IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | Consolidated Under |
| LIABILITY LITIGATION (No. IV) | : | MDL DOCKET NO. 875 |
| _____ | : | |
| FRANK K. WILLIAMS, JR., et al. | : | E.D. PA Civil Action No. |
| | : | 09-cv-70101 |
| v. | : | |
| | : | Transferor Court |
| LOCKHEED MARTIN CORPORATION, et al. | : | ED LA (New Orleans) |
| | : | 09-CV-065 |

**M E M O R A N D U M**

M. FAITH ANGELL                                                                                     September 9, 2013
UNITED STATES MAGISTRATE JUDGE

As I have stated in prior orders, the pretrial process in this case has been tortured and contentious. It is regrettable, and disturbing, that this Court is now faced with a request to remove Counsel based on allegations of ethics violations. The moving papers, responses in opposition and various supplemental pleadings are colored with disparaging commentaries on opposing counsel's conduct, much of it irrelevant. The only issues before this Court, and the only issues I will decide, are whether Plaintiffs' Counsel had *ex parte* contact with current Lockheed Martin employees, whether this contact violated Rule 4.2 of the Pennsylvania Rules of Professional Conduct, and whether Plaintiffs' Counsel's contact in this regard warrants his disqualification and/or the imposition of other sanctions.

    **I.**    **Lockheed's Motion to Re-Open the Evidentiary Hearing.**

Before addressing the disqualification issues, I must first rule on Defendant Lockheed Martin's motion to re-open the evidentiary hearing held on July 15, 2013. Defendant Lockheed asserts that after the July 15, 2013 evidentiary hearing, its Counsel contacted current Lockheed Martin employees associated with this case "in an effort to identify to whom Mr. Didriksen [Plaintiffs' Counsel] had claimed to have

spoken briefly and non-substantively." *Lockheed Martin's Motion to Re-Open Evidentiary Hearing* [Document #246] at 2. This search led to James Blevins. According to Mr. Blevins, the man who contacted him identified himself as an attorney in this case and spoke to Mr. Blevins for ten to fifteen minutes, asking him questions about the decedent and asbestos in the buildings at MAF. Defendant Lockheed argues that:

> "Either Mr. Didriksen falsely characterized as non-substantive the nature of his conversation with Mr. Blevins, Mr. Didriksen falsely omitted his conversation with Mr. Blevins altogether, or, if Mr. Blevins spoke to a different Plaintiff's attorney, Mr. Didriksen deemed it appropriate to conceal this interview from the Court and Lockheed Martin's Counsel. Based upon the seriousness of these facts, not possible of determination until after the close of the July 15, 2013 evidentiary hearing, the Court should re-open that hearing to take the testimony of Mr. Blevins and require the presence of the Plaintiff's counsel who interviewed Mr. Blevins."

*Id.* at p. 3.

At the July 15, 2013 hearing, Mr. Didriksen testified that, in addition to speaking with Richard Smith, he interviewed a number of former employees who had worked with the decedent at the Michoud Assembly Facility ["MAF"]. *July 15, 2013 Hearing* [Document #231] at p. 12. In speaking with a group of retirees who had known the decedent, Mr. Didriksen was given a name and telephone number of an individual who he thought was currently working for Jacobs Engineering. Mr. Didriksen called the individual (whose name he couldn't recall at the July 15, 2013 hearing). At the beginning of the conversation, the individual stated that he was still working for Lockheed Martin, at which time Mr. Didriksen replied that he was not intending to talk to current employees and ended the call without getting any information. *Id.* at p. 39.

In response to Lockheed's motion to re-open the evidentiary hearing, Plaintiffs contend that the one other current Lockheed employee to whom Mr. Didriksen had briefly spoken before learning that he was a current employee and terminating the conversation without exchanging any information was Barney Roberts. *Plaintiffs' Memorandum in Opposition to Motion to Re-Open Evidentiary Hearing* [Document #254] at 4. Plaintiffs assert that no one from the Didriksen law firm made the call identified in Mr.

Blevins' declaration, and have provided declarations of counsel and business and cell phone records to support this. *Id.* at p. 1.[1] Plaintiffs argue that there is no reason to reopen the evidentiary hearing on Lockheed's motion to disqualify counsel, stating:

> "A full and fair hearing regarding the *ex parte* contact with Mr. Smith was already held before this Court. Lockheed was given every opportunity to present its witnesses; it did so and rested its case. Given the lack of evidence supporting the claims made in the Motion, it would be unfair to allow Defendant's accusations to burden Plaintiffs' Counsel with another hearing."

*Id.* at p. 6.

I agree that there is insufficient evidence to re-open the evidentiary hearing. In his declaration, Mr. Blevins states that a man who identified himself as "a lawyer in the case concerning Frank Williams" left a message on his answering machine on his work phone in Huntsville, Alabama on April 19, 2013. He specifically remembers the date because it was Mr. Blevins' birthday. A few days later, the man called Mr. Blevins' work phone a second time. Mr. Blevins states that he doesn't recall the man's name, however, he identified himself as a lawyer "for the litigants" in the Frank Williams case and confirmed that he did not represent Lockheed Martin. *August 13, 2013 Declaration of James Blevins*, attached to Lockheed's Motion to Reopen Evidentiary Hearing [Document #246-2] at p. 2. This information, when considered in light of the evidence produced by Plaintiffs in opposition to the motion to reopen, does not warrant further court proceedings. Lockheed Martin has not shown that the individual who contacted Mr. Blevins in April 2013 was an attorney working for, or associated with, the Didriksen law firm. I find, therefore, that was no *ex parte* contact of Mr. Blevins by Plaintiffs' Counsel and there is no need to reopen the evidentiary hearing.

---

1  Phone records and declarations of counsel are attached to Plaintiffs' response in opposition to the motion to reopen the evidentiary hearing as Exhibits "A" through "D". *Plaintiffs' Memorandum in Opposition to Motion to Reopen Evidentiary Hearing* [Documents #254-1 through 254-4].

## II. Lockheed's Motion to Disqualify Plaintiffs' Counsel.

On June 12, 2013, Defendant Lockheed Martin moved to disqualify Mr. Didriksen and his firm from representing Plaintiffs based on their *ex parte* interview with Lockheed's employee, Richard C. Smith. Lockheed argues that this *ex parte* contact with Mr. Smith violates Rule 4.2 of the Pennsylvania Rules of Professional Conduct, Comment 7. *Lockheed's Motion to Disqualify Plaintiffs' Counsel* [Document #167] at pp. 1, 8.

Given the serious nature of the allegations, I scheduled an evidentiary hearing which took place on July 15, 2013. At that hearing, testimony was taken from Caleb Didriksen and Richard Smith. *See Evidentiary Hearing,* N.T. 7/15/13 [Document #231]. I permitted the parties to submit supplemental briefing, which has been completed.

In its supplemental brief in support of its motion to disqualify, Lockheed argues that there are five compelling reasons for disqualification: (1) the nature and extent of the alleged misconduct by Plaintiffs' Counsel; (2) the timing of the alleged misconduct; (3) the way in which the alleged misconduct was committed; (4) the reason for the alleged misconduct and (5) the consequences of the alleged misconduct. *Lockheed's Supplemental Brief in Support of Motion to Disqualify* [Document #236] at pp. 1-2.

In response, Plaintiffs assert that there was no violation of the Pennsylvania Rules of Professional Conduct but "permitted though unintended contact made by Plaintiffs' Counsel with a current Lockheed employee on or about April 25, which was disclosed promptly to counsel for Lockheed and to this Court, which neither actually harmed, nor will prejudice at trial, any interests of Lockheed. The phone conversation was not a violation of Rules of Professional Conduct as Mr. Richard C. Smith, to whom Plaintiffs' Counsel spoke, is neither involved in this litigation, nor committed any acts or omissions which could impute liability to Lockheed in this matter." *Plaintiffs' Opposition to Lockheed's Motion to Disqualify* [Document #193] at p. 1.

Rule 4.2 of the Pennsylvania Rules of Professional Conduct, which have been adopted by this Court, governs communications of an attorney with a person represented by counsel. The current applicable rule states:

> "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

Pa. Rule of Professional Conduct, Rule 4.2.

Comment 7 to Rule 4.2 specifically addresses contacts with employees of a represented organization:

> "In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability."

*Id.*, Comment 7.

In this case, the parties do not dispute that *ex-parte* contact with Richard Smith took place. *Plaintiffs' Opposition to Lockheed's Motion to Disqualify* [Document #193] at p. 1 (asserting that there was a "permitted though unintended contact made by Plaintiffs' Counsel with a current Lockheed employee on or about April 25 [. . . ]"). I must determine, therefore, whether Mr. Smith falls within one or more of the groups of prohibited individuals identified in Comment 7. Lockheed does not argue that Richard Smith supervises, directs or regularly consults with its lawyers concerning this matter. Lockheed's allegations focus on the second and third prongs, arguing that Richard Smith has the authority to obligate Lockheed regarding the instant litigation, and his act or omission in connection with Plaintiffs' claims may be imputed to Lockheed. *Lockheed's Motion to Disqualify Counsel* [Document #167-1] at p. 9 and *Lockheed's Supplemental Brief in Support* [Document #236] at p. 4.

The Third Circuit has stated: "The underlying policy and Official Comment to the Rule [4.2] make clear that it was intended to forbid *ex parte* communications with all institutional employees whose acts or omissions could bind or impute liability to the organization or whose statements could be used as admissions against the organization, presumably pursuant to Federal Rule of Evidence 801(d)(2)(D)." *EEOC v. Hora*, 239 Fed. Appx. 728, 731 (3d Cir. 2007)(quoting *Univ. Patents, Inc.v. Kligman,*737 F.Supp. 325, 328 (E.D. Pa. 1990)). The scope of the no-contact rule does not "shroud every custodian, cafeteria worker and receptionist simply in light of their mantle as 'corporate employee'." *University Patents v. Kligman,* 737 F.Supp. 325, 328 (E.D. Pa. 1990).

> "The key information needed by the trial court to determine if an employee qualifies for protection from ex parte communication with opposing counsel is what status that employee has within the employee's organization, i.e., whether, by virtue of the employee's status, a statement made by this employee could impute liability to the company."

*Hora*, 239 Fed.Appx. at 731 (quoting *McCarthy v. SEPTA,* 772 A.2d 987, 993 (Pa.Super.Ct. 2001)).

Lockheed argues that Richard Smith's "position, functions and exercise of discretion, all place him squarely in the center of the class of represented organizations' constituents which can obligate/bind a represented organization and which Rule 4.2 precisely was designed to protect." *Lockheed's Motion to Disqualify Counsel* [Document #167] at p. 9. According to Lockheed, Rule 4.2 applies to constituents whose job descriptions demonstrate they "exercise significant individual judgment and discretion outside of established policies and procedures." *Id.* at p. 10 (quoting *Carter-Herman v. City of Philadelphia*, 897 F.Supp. 899, 903-4 (E.D. Pa. 1995)).

Lockheed contends that it is not necessary, under Third Circuit caselaw, for Mr. Smith to possess authority to direct this litigation or resolve this matter. *Lockheed's Supplemental Brief in Support* [Document #236] at p. 5. It asserts that "Plaintiffs confuse the tests for litigation supervision, direction and communication, and managerial responsibility on the one hand with the tests for determining whether

statements constitute admissions and whether an employee can impute liability to the organization on the other." *Id.* at p. 6. According to Lockheed:

> "If Mr. Smith may speak on behalf of the corporation now (on any subject) and the subject matter of his statements merely are within the scope of his employment (i.e., not related to personal matters outside of work), then his statements may be considered admissions on behalf of and admitted against Lockheed Martin."

*Id.* at p. 7.

I think Lockheed reads the standard too broadly. The Third Circuit has stated that Rule 4.2 is intended to forbid *ex parte* communications with all institutional employees whose "acts or omissions could obligate or impute liability to Defendants **with respect to the matter**. [emphasis added]." *Hora*, 239 Fed.Appx. at 731.[2] *See Penda Corp. v. STK, LLC,* C.A. No. 03-6240, 2004 WL 1628907 at *5 (E.D. Pa. July 16, 2004)(finding that an employee's statements with "**regard to the subject matter of the representation** [emphasis added]" may constitute an admission) and *Seiler v. Hollidaysburg American Legion Ambulance Service,* CA No. 3:10-41, 2011 WL 4017965 at *13 (W.D. Pa. September 8, 2011)(noting that Comment 7 can be divided into a "three-part inquiry: 1) the extent to which Parisi [the constituent] supervises, directs or communicates with Defendant's counsel regarding the instant litigation; 2) the extent to which Parasi has the authority to obligate Defendant **regarding the instant litigation**; and 3) the extent to which Parisi's acts or omissions in connection with this litigation may be imputed to Defendant. [emphasis added].").

There is not enough evidence in the record to support a conclusion that statements made by Richard Smith, by virtue of his status as an aeronautical engineer (with various increasing supervisory and managerial responsibilities), would be admissions attributable to, and used against, Lockheed in the litigation of Plaintiffs' asbestos-related claims. The fact that Mr. Smith is authorized to speak on behalf of

---

2     This is consistent with the language of Comment 7 to Rule 4.2 which applies to a constituent of an organization "who has authority to obligate the organization **with respect to the matter** or whose act or omission **in connection with the matter** may be imputed to the organization for purposes of civil or criminal liability. [emphasis added]" Pa. Rule of Professional Conduct, Rule 4.2, Comment 7.

Lockheed Martin on "highly significant matters related to research, engineering matters, programs and technical capabilities[3]" does not establish that he has the authority to impute liability to Lockheed Martin for use, testing or remediation of asbestos. Therefore, I find that Lockheed has not met its burden to show that Richard Smith falls within the second group of no-contact employees identified in Comment 7.

Turning to the third group of no-contact employees, those whose acts or omissions in connection with the matter may be imputed to the organization for purposes of civil or criminal liability, I find that Lockheed has established that Richard Smith's status as the decedent's former supervisor during the relevant period of time makes him more than a mere "fact witness." *See Plaintiffs' Opposition to Lockheed's Motion to Disqualify* [Document #193] at p. 10. In their complaint, Plaintiffs make, *inter alia,* the following assertions as to Lockheed Martin:

> "Defendant Lockheed Martin Corporation, as successor in interest to Martin Marietta, Inc. are strictly liable as the owners and/or lessees of the Michoud Assembly Facility where Mr. Williams received significant exposures to asbestos fibers throughout his working career as they had garde [sic] of the asbestos containing materials at all relevant times herein. Alternatively, Lockheed Martin Corporation, as successor in interest to Martin Marietta, Inc., knew or should have known of the propensity of asbestos fibers to cause and/or contribute to the mesothelioma now suffered by Frank Williams, yet they failed to adequately warn and/or protect Mr. Williams from inhaling these dangerous fibers throughout his career."

*Id.: Exhibit 1* (Plaintiffs' Complaint) [Document #167-2] at p. 29 ¶¶51, 52.

In their supplemental responses to Lockheed's interrogatories and document requests, dated April 12, 2013, Plaintiffs described the decedent's asbestos exposure as follows:

> "[ . . . ] Frank Williams worked in various roles at the Michoud Assembly Facility in New Orleans, Louisiana ('MAF'), for Lockheed Martin Corporation and/or its predecessor Martin Marietta Corporation (collectively 'Lockheed') from 1974 to 1993. Frank Williams was exposed during his employment to asbestos or asbestos-containing materials or products sold, manufactured, supplied, distributed, disseminated, installed, removed, disposed of, and/or otherwise produced by the defendants in the above-captioned matter. Specifically, he was exposed to asbestos on a daily basis during his employment as a result of the use of asbestos and asbestos-containing materials by Lockheed and others in the

---

3   This language taken from Mr. Smith's current job description in his role as "Project Engineer." *Lockheed's Motion to Disqualify Counsel: Exhibit "E"* [Document #167-4] at p. 32.

office buildings at the MAF. Frank Williams was also exposed over many years in other public and/or civilian areas of the MAF that contained asbestos, such as the administration building and employee cafeteria. Upon information and belief, Frank Williams was exposed to asbestos in Buildings 101, 102, 103, 110, 320, 350, 351 and 420, among others."

*Lockheed's Supplemental Brief in Support:Exhibit 1* (Plaintiffs' Supplemental Responses) [Document 236-2] at p. 7.

It is clear that Richard Smith was involved in the facts which give rise to Plaintiffs' allegations. He has testified that he was Frank Williams' technical supervisor during the relevant time period and that as such, he directed the types of work assigned to Mr. Williams and was primarily responsible for him carrying out his work in a safe manner. *July 15, 2013 Hearing* [Document #231] at pp. 65, 69. In light of his responsibilities at Lockheed, Mr. Smith's actions with respect to the environment Mr. Williams worked in, which he alleges exposed him to asbestos on a daily basis, will be at issue. Richard Smith is a person whose acts or omissions in connection with Mr. Williams' asbestos exposure may be imputed to Lockheed and, therefore, he falls within the scope of Rule 4.2.

Plaintiffs argue that even if the Court were to find that contact with Richard Smith by Plaintiffs' Counsel is prohibited by Rule 4.2, there was no violation because there was no "intentional contact." According to Plaintiffs, Rule 4.2 requires actual knowledge of representation, "a mistaken and unintentional contact does not violate the rule." *Plaintiffs' Supplemental Memorandum in Opposition to Motion to Disqualify* [Document #248] at p. 2. They assert:

> "Given the complete absence of evidence that Mr. Didriksen had actual knowledge of Mr. Smith's employment status prior to the conclusion of their conversation, there was no violation of the rule and no further discussion of the issue before the Court should be necessary. [ . . . ]
> Plaintiffs' Counsel did not intend to speak to any current employees of Lockheed. When Plaintiffs' Counsel realized he had inadvertently spoken with a current employee, he let Mr. Smith know it was inadvertent, and then, self-reported to the Court and to Defense Counsel. [citation to email omitted]. These are not devious actions. He acknowledged the contact, revealed the extent of the conversation and ceased any discovery efforts which risked making additional contact with current Lockheed employees. [ . . . ] Every single piece of evidence presented herein supports that Mr. Didriksen believed that Mr. Smith had retired from Lockheed, and was thus a former employee. Given Plaintiffs' Counsel's

good faith in self-reporting and full disclosure of the one-time, limited conversation, without knowledge of Mr. Smith's employment status, sanctions against Plaintiffs' Counsel are unwarranted – the extreme sanctions requested by Defendant are totally unjustifiable."

*Id.* at pp. 3-4.

Neither willful conduct, nor bad faith, is necessary to establish a Rule 4.2 violation. Actual knowledge of the fact of representation is required and can be inferred from the circumstances. Pa. Rule of Professional Conduct, Rule 4.2, Comment 8. Comment 8 notes that an attorney may not evade the requirement of obtaining the consent of counsel before speaking to a represented person "by closing eyes to the obvious." *See Plaintiffs' Supplemental Memorandum in Opposition to Motion to Disqualify* [Document #248] at p. 2 (quoting Comment 8). Thus, Rule 4.2 places an obligation on an attorney to determine in the first instance whether an individual is represented by counsel before engaging in any substantive *ex parte* communications.

The facts leading up to the contact with Richard Smith lead to the conclusion that Mr. Didriksen intentionally had a substantive *ex parte* conversation with Richard Smith, who he knew was a former supervisor of Frank Williams at MAF, without first determining whether he was a current Lockheed employee. In support of this conclusion, I find the following facts determinative:

> 1. At an April 16, 2013 hearing before me, the issue of former supervisors identified in Frank Williams' personnel file was discussed. Mr. Didriksen stated that there had been some discussion with Counsel for Lockheed about "the fact that some of my client's former supervisors may still work there, but they have never been interviewed, so we don't know what they know. But, they potentially still work there, so I can't get to interview them." *April 16, 2013 Hearing* [Document #101] at p. 30. Counsel for Lockheed stated that Mr. Williams' former supervisors "are not there any more. They either worked for Jacobs or they have been transferred." *Id.* at 31.
> Lockheed's Counsel referred to a prior discussion in which there was an agreement that Plaintiffs' Counsel would notice depositions of former supervisors, Counsel for Lockheed would provide addresses for those who were no longer employees and for those who were identified as current

Lockheed employees, Plaintiffs' Counsel would "have to go through [Lockheed's Counsel]." Plaintiffs' Counsel responded: "I'll take that." *Id.* at pp. 33-34[4].

2. It is undisputed that on April 17, 2013, Plaintiffs' Counsel provided Lockheed's Counsel a "list of supervisors we have so far." The list identified nine individuals, including Richard Smith. *Plaintiffs' Opposition to Motion to Disqualify* [Document #193] at p. 25.[5]

   Plaintiffs' amended responses to Lockheed's discovery requests provided the names of 42 former co-workers of the decedent, including Richard Smith, and were submitted on April 25, 2013.

   On May 2, 2013, Plaintiffs provided a "more-complete list of co-workers/supervisors" in their second supplemental responses. *Id.*

3. On April 17, 2013, one day after acknowledging that he was not permitted to interview current Lockheed employees without notifying Lockheed's Counsel, Mr. Didriksen asked an attorney in his firm to perform a public records search for six of Mr. Williams' former co-workers and supervisors and provide him with their current telephone numbers and addresses if she was able to find them. *Plaintiffs' Supplemental Memorandum in Opposition to Motion to Disqualify*: *Exhibit "B"* (August 16, 2013 Declaration of Kristin M. Lausten) [Document #248-2].

   Ms. Lausten advised Mr. Didriksen of her communication with Richard Smith's wife and told him that she believed he was retired and living in California. *Id.*

   Ms. Lausten was only able to locate one other supervisor who was still living, Mr. Nolan. On April 18, 2013, after Ms. Lausten explained that she was working for a law firm that represented Mr. Williams' family in a wrongful death suit, Mr. Nolan advised that he did not wish to speak to her and ended the call. *Id.*

4. In response to the motion to disqualify, filed on June 26, 2013, Plaintiffs asserted that Lockheed's "lack of cooperation with Plaintiffs' Counsel and the rules of discovery to date," "**left Plaintiffs' Counsel little choice** but to try to seek out the information itself. [emphasis added]" Plaintiffs described the

---

4   At the July 15, 2013 hearing, Mr. Didriksen confirmed that on April 9, 2013, he and Counsel for Lockheed agreed that deposition notices would be issued by Plaintiffs' Counsel for former co-workers and supervisors, to which Lockheed's Counsel would respond by identifying those individuals still employed by Lockheed. *July 15, 2013 Hearing* [Document #231] at pp. 24-26.

Interestingly, in their supplemental opposition to the motion to disqualify, Plaintiffs take the position that at the April 16, 2013 hearing, Mr. Didriksen "did not promise to cease all attempts to discover former co-workers of Mr. Williams. When Mr. Groome offered to provide the names and addresses of the former co-workers, Mr. Didriksen merely conceded that he would accept Mr. Groome's meager offer after the protracted discovery process." *Plaintiffs' Supplemental Opposition to Motion to Disqualify* [Document #248] at p. 17.

5   *See id.: Exhibit J* (April 17, 2013 email) [Document #193-10].

conversation with Richard Smith as a "an alleged, minor error." *Plaintiffs' Opposition to Motion to Disqualify* [Document #193] at p. 26.

5. At the July 15, 2013 hearing, Mr. Didriksen testified that he doesn't like opposing counsel talking to employees of his clients and that he holds himself to the same standard. He chooses as a general rule not to speak to employees of opposing counsel's clients. *July 15, 2013 Hearing* [Document #231] at 20, 40. He stated that in contacting former co-workers and supervisors in this litigation, if he didn't have reason to believe that they were retired, he asked up front who they currently worked for. He didn't ask Richard Smith that question initially because Ms. Lausten had told him that Smith was retired. *Id.* at 29, 39.

6. At the July 15, 2013 hearing, in response to questions from his Counsel, Mr. Didriksen described why he asked Ms. Lausten to look for potential witnesses from Mr. Williams' personnel file:

"Q. Let's talk for a moment about your conversations with Ms. Lausten.
 A. Okay.
 Q. You asked her to – can you describe how you asked her to look for these potential witnesses?
 A. I was just – I was – yes. I was just fed up with our inability to move forward in this case. I was so frustrated and so I just asked her. I said 'Look, they're not giving us any information, so see if you can find any of these former employees so that we can talk to somebody.'"

*Id.* at pp. 45-46.

Under the circumstances of this case, I find that Mr. Didriksen frustrated by the course of discovery in this case, believing that Lockheed's Counsel was not providing information, and facing a "hard discovery deadline" of June 30, 2013, closed his eyes to the obvious when he spoke to Richard Smith. *See Plaintiffs' Opposition to Motion to Disqualify* [Document #193] at p. 3 ("With no information from Lockheed's Counsel differentiating current employees from former employees, and with a hard discovery deadline of June 30 quickly approaching, at the end of April, Plaintiffs' Counsel began to call potential witnesses using telephone numbers obtained using ordinary internet searching.")[6]. Mr. Didriksen did not

---

6   In their opposition to Lockheed's motion to disqualify, Plaintiffs discuss "Lockheed Counsel's role" in the events leading to the *ex parte* contact with Mr. Smith and argue that the Court should not "reward the bad behavior of Lockheed's Counsel" by awarding sanctions. *Plaintiffs' Opposition to Motion to Disqualify* [Document #193] at pp. 2, 24-26.

ask Mr. Smith at the beginning of the conversation if he was still employed by Lockheed, despite knowing that he was in the group of former supervisors that Lockheed was to provide information about their current employment status before being contacted by Plaintiffs' Counsel. Instead, Mr. Didriksen took the risk of holding a substantive *ex parte* conversation in order to gather information. *See Plaintiffs' Supplemental Opposition to Motion to Disqualify* [Document #248] at p. 3 (noting that when Plaintiffs' Counsel realized that he had inadvertently spoken with a current Lockheed employee, "[h]e acknowledged the contact, revealed the extent of the conversation and **ceased any discovery efforts which risked making additional contact with current Lockheed employees.** [emphasis added]."). Frustration with the course of this litigation did not give Mr. Didriksen a right to evade his obligation under Rule 4.2 to determine whether an individual is represented by counsel before engaging in any substantive *ex parte* communications[7]. *See University Patents, Inc. v. Kligman,* 737 F.Supp. 325, 329 (E.D. Pa. 1990)(concluding that counsel who "imprudently proceeded with [*ex parte*] interviews [with current employees of Defendant university] unilaterally without regard for potential legal and ethical violations" violated Rule 4.2).

Having found a violation of Rule 4.2, I turn to the issue of an appropriate sanction. Lockheed has requested disqualification of Mr. Didriksen and his firm from further representation of Plaintiffs in this action, arguing that Plaintiffs' Counsel's "reckless conduct threatens and prejudices not only Lockheed Martin's defenses but also Plaintiffs' case-in-chief." *Lockheed's Motion to Disqualify* [Document #167] at pp. 1-2. Lockheed's five compelling reasons to disqualify counsel can be summarized as follows:

1. Mr. Didriksen conducted a "lengthy, comprehensive and **detailed** interview of Mr. Smith, a current Lockheed Martin employee who formerly supervised Decedent [emphasis in original];"

2. Mr. Didriksen "interrogated Mr. Smith immediately **after** specifically agreeing with Lockheed Martin's Counsel regarding, and confirming in open court, a procedure designed to prevent exactly this misconduct and immediately after being told in open court of the employment status of **all** of Decedent's former supervisors [emphasis in original];"

---

7   Separately from my conclusion that Mr. Didriksen violated Rule 4.2, I also find that his contact with Mr. Smith amounts to litigation misconduct, which independently supports a sanction of partial attorney fees and expenses in the amount discussed below.

3. Mr. Didriksen has "adopted an **absurd** hypothesis concerning Mr. Smith's employment status with an aerospace defense contractor and **willfully disregarded** all reasonable avenues of testing that hypothesis before conducting the interrogation of Mr. Smith [emphasis in original][8];"

4. Mr. Didriksen' "overarching theme, expressed repeatedly in writing and under oath is: because I was frustrated by defendant's discovery responses, **I had to take matters into my own hands** [emphasis in original];" and

5. The consequences of not disqualifying Plaintiffs' Counsel would be prejudicial to Lockheed specifically and "would encourage chaos in the discovery process, dilute the Model Rules of Professional Conduct, and render attorney-client privilege meaningless."

*Lockheed's Supplemental Brief in Support* [Document #236] at pp. 1-2, 18-21, 32.

Disqualification of counsel is a "draconian measure." *Hora*, 239 Fed. Appx. at p. 731. It requires the Court to "consider the client's right to be represented by the counsel of his choice, as well as the opposing party's right to prepare and try its case without prejudice." *Id. See Penda*, 2004 WL 1628907 at *7 ("The Court must balance a party's right to be represented by counsel of his or her choice, as well as the opposing party's right to prepare and try its case without prejudice.") and *Kligman,* 737 F.Supp. at p. 329 ("In determining the proper sanction or remedy, the Court must consider the client's right to be represented by the counsel of his choice, as well as the opposing party's right to prepare and try its case without prejudice.").

---

8   Lockheed argues that Plaintiffs' Counsel has offered a litany of "ridiculous and false" excuses as to why he assumed that Mr. Smith was retired and cites to Plaintiffs' opposition where they argued:
"Plaintiffs' Counsel's incorrect conclusion that Mr. Smith was no longer employed by Lockheed was based on the following facts: after being advised during the initial contact with Mrs. Smith that the subject of the call was a lawsuit against Lockheed Martin for damages and that the person who sought his assistance was plaintiffs' counsel, Mr. Smith returned the call; Mr. Smith had relocated; he had left his work at MAF after a ten-plus year tenure; he spoke of his employment at MAF in the past tense; he did not mention his ongoing employment with Lockheed; and Plaintiffs' Counsel found him in an areas where many retire."
*Plaintiffs' Opposition to Motion to Disqualify* [Document #193] at p. 14.

Lockheed contends that the prejudice resulting from Plaintiffs' Counsel's misconduct is "manifest" and has "obliterated" its attorney-client privilege. *Lockheed's Supplemental Brief in Support* [Document #236] at p. 29. According to Lockheed, the circumstances of this case call out for disqualification. Of the five compelling reasons for disqualification, the first four are relevant, and were considered, in my determination that a Rule 4.2 violation occurred.

Only the fifth reason, prejudice to Lockheed, is to be weighed against Plaintiffs' right to proceed with counsel of their choice. Lockheed argues prejudice as follows:

> "Plaintiffs' Counsel's overreach also tainted the lawyer-client relationship between Lockheed Martin and its counsel and thus prejudices Lockheed Martin and constitutes an independent ground for disqualification of Plaintiffs' counsel and his firm. [citations to caselaw omitted] Specifically, by planting the seed in Mr. Smith's mind that he may have been exposed to asbestos and learn first-hand that mesothelioma 'is a bad way to die,' Plaintiffs' Counsel's actions had a chilling effect on Mr. Smith such that Lockheed Martin's Counsel cannot determine whether or not the information conveyed in Mr. Smith's declaration is, in fact, the information he divulged and cannot determine the extent of the information he divulged. Indeed, considering that Plaintiffs' Counsel and Mr. Smith spoke for twenty-five minutes, Mr. Smith – literally, a rocket scientist – recalls very few details regarding the subject matter, scope, and extent of his conversation with Plaintiffs' Counsel. Additionally, given Plaintiffs' Counsel's pressure tactics, Mr. Smith may now be concerned that he was exposed to asbestos at MAF, will develop mesothelioma, and learn first-hand that it is a 'bad way to die.'
> Plaintiffs' Counsel's and his firm's *ex parte* contacts with Mr. Smith compel Plaintiffs' Counsel's disqualification. [citation omitted] 'Disqualification is required where the substance of the *ex parte* discussion went to the nub of the lawsuit in order to protect the adverse party from any unfair advantage the attorney *might* have achieved by the improper contact. *Inorganic Coatings, Inc. v. Falberg,* 926 F.Supp. 517, 520 (E.D. Pa. 1995)(emphasis in original) *quoting and following Papanicolaou,* 720 F.Supp at 1085. Here, there is no question that Plaintiffs' Counsel's communications with Mr. Smith went to the nub of the lawsuit since they now *are* at the nub of Plaintiffs' lawsuit.
> Mr. Smith articulated to Plaintiffs' Counsel the only facts tending to establish a causal nexus linking the presence of asbestos with, and Lockheed Martin's responsibility for, Decedent's alleged injury. Mr. Smith has, essentially, provided Plaintiffs' Counsel with a specific theory of Plaintiffs' case, information regarding his relationship with Decedent (supervisor/coworker), Lockheed Martin's customer (NASA, as their work constructing the rocket and the facility maintenance was pursuant to Lockheed Martin's contract with NASA), Lockheed Martin's manufacturing processes, and Mr. Smith's opinion regarding alleged exposures to asbestos that are at-issue in this case."

*Lockheed's Supplemental Brief in Support* [Document #236] at pp. 35-37.

The asserted prejudice to Lockheed is overstated. In neither his June 7, 2013 declaration, nor his testimony at the July 15, 2013 hearing, did Mr. Smith refer to, or exhibit, damage caused in his relationship with Lockheed or its Counsel as a result of the conversation with Plaintiffs' Counsel. *See Lockheed's Motion to Disqualify: June 7, 2013 Declaration of Richard C. Smith* [Document #167-4] and *July 15, 2013 Hearing* [Document #231] at pp. 62-83. He testified that he had been truthful to the best of his knowledge in his conversation with Plaintiffs' Counsel. *July 15, 2013 Hearing* [Document #231] at p. 80. There is no evidence that Mr. Smith was tainted by the conversation with Plaintiffs' Counsel to such an extent that Lockheed is now unable to defend itself against Plaintiffs' claims.

I find that Lockheed has not established that it has been so severely prejudiced by Plaintiffs' Counsel's misconduct that the "draconian" measure of disqualification is required.

The circumstances of this case do warrant sanctions against Plaintiffs' Counsel for his reckless litigation misconduct. Mr. Didriksen's evasion of his responsibility to determine whether Richard Smith was a current Lockheed employee before engaging him in an *ex parte* conversation was improper. I conclude, therefore, that it warrants a partial award of attorney fees and expenses. It would not be equitable to hold Plaintiffs responsible for the entire cost of Lockheed's fees and expenses in pursuing its motion to disqualify because Lockheed was only partially successful, and because both parties have contributed to inflating the expense in litigating the motion to disqualify. With these considerations in mind, I will award Lockheed $10,000.00 in partial attorney fees and costs.

**III.     Plaintiffs' Cross Motion for Sanctions**.

In their opposition to Lockheed's motion to disqualify, Plaintiffs have included a cross-motion for sanctions. Plaintiffs request "an award of attorneys fees and costs from Lockheed for subverting the goals of justice by filing and pursuit of this frivolous motion, for intentionally violating this Court's order that it was not to use it[s] motion as a basis to subvert other discovery and for the reasonable attorneys fees and costs incurred defending this motion, in an amount to be determined, and for any other relief the Court deems appropriate." *Plaintiffs' Opposition to Lockheed's Motion to Disqualify* [Document #193] at p. 27.

Having determined that Lockheed is entitled to an award of sanctions as a result of its motion to disqualify Plaintiffs' Counsel, I do not find that the motion to disqualify was frivolous, nor was it merely an attempt to delay the proceedings.   Plaintiffs' cross motion for attorney fees and costs is denied.

**IV.    Conclusion.**

For the reasons stated above, Lockheed's Motion to Re-Open the Evidentiary Hearing on Motion to Disqualify Plaintiffs' Counsel [Document #246] is **DENIED,** Lockheed Martin's Motion to Disqualify Counsel [Document #167] is **GRANTED IN PART, DENIED IN PART,** and Plaintiffs' Cross Motion for Sanctions for Lockheed's Refusal to Permit Richard C. Smith to Give Discovery Deposition [Document #193] is **DENIED.**

BY THE COURT:

_S/M. FAITH ANGELL_____
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

By Email to:   the Honorable Eduardo C. Robreno
　　　　　　　Caleb H. Didriksen, III, Esq.　　　　caleb@didriksenlaw.com
　　　　　　　Diane R. Cosenza, Esq.　　　　　　diane@didriksenlaw.com
　　　　　　　Michael D. Lane, Esq,　　　　　　　mike@didriksenlaw.com
　　　　　　　A. Wendell Stout, III, Esq.　　　　　wstout@dkslaw.com
　　　　　　　David K. Groome, Jr., Esq.　　　　　dgroome@dkslaw.com
　　　　　　　Robert E. Kerrigan, Jr., Esq.　　　　rkerrigan@dkslaw.com
　　　　　　　Michael D. Smith, Esq.　　　　　　Smith@glazieryee.com
　　　　　　　Ronald Dean Church, Jr., Esq.　　　churchd@fpwk.com
　　　　　　　Jennifer Marie Studebaker, Esq.　　studebakerjm@fpwk.com
　　　　　　　Walter Watkin, Esq.　　　　　　　trey@fpwk.com
　　　　　　　Ann R. Chandler, Esq.　　　　　　ChandlerAR@fpwk.com
　　　　　　　James H. Brown, Jr., Esq.　　　　　jbrown@frilot.com
　　　　　　　John J. Hainkel, III, Esq.　　　　　jhainkel@frilot.com
　　　　　　　Angela M. Bowlin, Esq.　　　　　　abowlin@frilot.com
　　　　　　　John Cazale, Esq.　　　　　　　　jcazale@frilot.com
　　　　　　　Peter R. Tafaro, Esq.　　　　　　　ptafaro@frilot.com
　　　　　　　Douglas R. Kinler, Esq.　　　　　　dkinler@spsr-law.com

| | |
|---|---|
| Susan Beth Kohn, Esq. | suek@spsr-law.com |
| Michael D. Harold, Esq. | michaelh@spsr-law.com |
| James R. Guidry, Esq. | jguidry@spsr-law.com |
| Anne E. Medo, Esq. | amedo@hmhlp.com |
| C. Kelly Lightfoot, Esq. | klightfoot@hmhlp.com |
| Claude A. Greco, Esq. | cgreco@hmhlp.com |
| Jevan S. Fleming, Esq. | jfleming@hmhlp.com |
| Diane Sweezer Davis, Esq. | dianes@willingham-law.com |
| Jeannette Seraile-Riggins, Esq. | jeanettesr@willingham-law.com |
| Jennifer D. Zajac, Esq. | jenniferz@willingham-law.com |
| Thomas L. Cougill, Esq. | tomc@willingham-law.com |
| Amaryah K. Bocchino, Esq. | abocchino@cmjlaw.com |
| Jason A. Cincilla, Esq. | jcincilla@cmjlaw.com |
| Jennifer Davis Oliva, Esq. | jdavisoliva@cmjlaw.com |
| Ryan W. Browning, Esq. | rbrowning@cmjlaw.com |
| Christopher O. Massenburg, Esq. | cmassenburg@sbm-legal.com |
| David J. Bourgeois, Esq. | davidb@duplass.com |
| Lawrence G. Pugh, III, Esq. | lpugh@pugh-law.com |
| Thorne D. Harris, Esq. | thorne@thornedharrisIII.com |
| Kenan S. Rand, Jr., Esq. | krand@pmpllp.com |
| Adrian A. D'Arcy, Esq. | aad@shieldsmottlund.com |
| Eric Todd Hebert, Esq. | toddhebert@sextonlaw.net |